IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
AUG 30 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| WILLIE R. SMITH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NUMBER |
| | ) | CV-01-C-2794-S |
| VAE NORTRAK, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

ENTERED
SEP 3 2002

**MEMORANDUM OF OPINION**
**GRANTING MOTION FOR SUMMARY JUDGMENT**

Before this Court is Defendant's Motion for Summary Judgment. Based on the undisputed facts, the Motion for Summary Judgment is GRANTED for the reasons stated herein.

**I. FACTS**

1. Plaintiff Willie Smith ("Smith") is an African-American male who began employment with defendant VAE Nortrak ("Nortrak") on July 21, 1997 as a grinder. He was paid $8.05 per hour. Throughout the course of his employment, he received promotions and pay raises, culminating with a salary of $11.95 per hour for an Operator 2 position.

2. Nortrak maintained a "No Fault Attendance Policy." Under that policy, employees were assessed points for tardiness and absences. These points were accumulated on a sliding 12-month scale so that points only stayed on the employee's record for 12 months from the date they were acquired. After receiving 25 points, an employee could be terminated for poor attendance. All employees were made aware of this policy when they were hired and signs about the policy were posted in the common areas of the facility. Further, each time an employee

received any points they were notified in writing and required to sign a slip, a No Fault Attendance Report, indicating the amount of points assessed and the total amount of points the employee had. Employees were given warnings and sometimes suspended when their points were in the high range (approximately 16-24 points).

3. Smith was informed about the policy and knew that an employee could be terminated if they had 25 points. In January 2001, Smith was terminated for poor attendance because he had accumulated 25 points. For each incident of absence or tardiness, Smith signed every No Fault Attendance Report. Further, Smith had received warnings regarding his points on several occasions.

4. Subsequently, Smith brought this suit, stating the following claims: (1) discriminatory discharge, (2) unequal pay, and (3) retaliation. Smith alleges that white employees had points taken off their records before the 12 month period expired and that he was paid less than white employees. Further, he believes his discharge was in retaliation for being deposed in another discrimination suit against Nortrak by a fellow employee in August of 2000.

## II. APPLICABLE LAW

Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material facts and that, based upon the undisputed facts, it is entitled to judgment as a matter of law. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). When ruling on a motion for summary judgment, the court must view the facts in a light favorable to the nonmoving party.

The Eleventh Circuit recently clarified the summary judgment standard in employment discrimination cases, stating that "the summary judgment rule applies in job discrimination cases just as in other cases." Chapman v. AL Transport, 229 F.3d 1012, 1026 (11th Cir. 2000). This

decision abrogated the previous view that summary judgment was not a proper vehicle for employment discrimination claims which often turn on an employer's motivation and intent. Id. at 1025 (citing Delgado v. Lockheed-Georgia Co., 815 F.2d 641, 644 (11th Cir. 1987); accord Batey v. Stone, 24 F.3d 1330, 1336 (11th Cir. 1994)).

A. *Discriminatory Discharge*

In order to establish a prima facie case of discriminatory discharge under Title VII, a plaintiff must prove that (1) he was a member of a protected class; (2) he was qualified for the position at issue; (3) an adverse employment action was taken against him; and (4) the employer treated similarly situated employees outside the protected class more favorably. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), see Holifield v. Reno, 115 F. 3d 1555, 1562 (11th Cir. 1997.) After the plaintiff proves his prima facie case, the burden shifts to the defendant to articulate non-discriminatory reasons for the employee's discharge. The plaintiff then bears the burden of showing that the employer's reasons are merely pretext. Id.

B. *Unequal Pay*

To establish a prima facie case of unequal pay under Title VII, the plaintiff must show that he was paid less than a member of a different race was paid for work requiring substantially the same responsibility. Walton v. Cowan Equipment Co., 774 F. Supp. 1343, 1345 (N.D. Ala. 1991). If the employee establishes a prima facie case, the employer must state a legitimate non-discriminatory reason for the pay disparity. The employee must then show that the employer acted with discriminatory intent in the pay disparity. Meeks v. Computer Associates International, 15 F. 3d 1013, 1019(11th Cir. 1994).

*C. Retaliation*

A prima facie retaliation case is established by showing that (1) the employee engaged in protected activity; (2) the employer was aware of that activity; (3) the employer took an adverse employment action against the employee; and a casual connection between the employee's protected activity and the employer's adverse action existed. Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999.) After plaintiff makes such a showing, the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action. Sullivan v. National R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999). The plaintiff must then show that the defendant's proffered reasons for the adverse action are actually pretext. Id.

### III. ANALYSIS

*A. Discriminatory Discharge*

Willie Smith has failed to meet his prima facie case for his discriminatory discharge claim. Smith is a member of a protected class and he was terminated from a position for which he was qualified. However, Smith has failed to prove that Nortrak treated employees outside of the protected class more favorably. After Smith's termination, eight employees rotated into his former job. Of those eight employees, five were African-American, including the employee who filled the job immediately after Smith's termination.

Smith maintains that he was disciplined more harshly under the No Fault Attendance policy than white employees. He specifically names the following white employees as his comparators: Shane McCloud, Scott Parobek, Billy Lewis, Barry McGinnis, and Shane Bender. Shane McCloud and Billy Lewis were both terminated for accruing 25 points under the

attendance policy. Scott Parobek voluntarily terminated his employment with Nortrak, at which time he had 6 points. These comparators indicate that, in fact, Nortrak applies its attendance policy equally to both races.

In regard to comparators McGinnis and Bender, the plaintiff believes that white employees had points taken off their records before the actual expiration of the points. These comparators did have points removed before the 365 days, but they were only a couple of days away from the 365 day period. Significantly, these two men were not at all near termination due to their points. Further, Nortrak has shown that these points were removed a few days early due to the procedure by which points are deducted. The human resources director does not check and remove points on a daily basis. Instead, she reviews the points in a batch, usually once a month. This procedure sometimes results in points being deducted a few days early. Nortrak has shown that several African-American employees have gotten points removed a few days early as a result of this procedure and thus, the points are not deducted according to race.

Smith has failed to show that employees outside of the protected class were treated more favorably and therefore, he has not proven his prima facie case for discriminatory discharge. Accordingly, summary judgment is granted on this claim.

*B. Unequal Pay*

Willie Smith has failed to prove his prima facie case for his unequal pay claim. Specifically, Smith has not shown that he was paid less than a member of a different race for work requiring substantially the same responsibility. Smith points to Eric Scott, Earnest Peoples, and Hardy Kuykendall as his comparators. Scott and Peoples, however, are African-American and made only five cents more per hour than Smith. Hardy Kuykendall is a white male who was

5

employed with Nortrak before Smith. He generally did not hold the same position as Smith and had a different job classification. At one point, Smith and Kuykendall each held an Operator 2 position. At that time, they were paid the same salary. Kuykendall became an Operator 3, and as a result, he does make more money than Smith. Kuykendall is paid $13.00 hour as an Operator 3, while Smith was paid $11.95 as an Operator 2.

Scott and Peoples are not valid comparators for an unequal pay claim because they are also African-American, members of Smith's own protected class. When Smith and Kuykendall had the same job, they received the same pay. At the time of his termination, Smith had a different job than Kuykendall, which clearly accounted for the difference in pay. Therefore, Smith has failed to show any pay disparity on the basis of race for the substantially the same work. Therefore, Smith has failed to establish his prima facie case and summary judgment is granted on this claim.

*C. Retaliation*

Smith has failed to prove a prima facie case for his retaliation claim. In August of 2000, Smith was deposed in the discrimination case of Keith Mitchell, a fellow employee, against Nortrak. Smith does not indicate that he said anything negative about Nortrak in Keith Mitchell's case that would have caused the company to retaliate against him. He does state that he did see Mitchell reprimanded for not being at his work station on time, while white employees were not likewise scolded. Other than that, Smith does not show that he made any serious allegations against Nortrak in Mitchell's case. Further, Smith has not demonstrated a causal connection between his participation in Mitchell's case and his termination. His termination did not occur until January of 2001, almost six months after his deposition in the

Mitchell case. Moreover, at the time of his termination, Smith had accumulated 25 points and was clearly in violation of the company's attendance policy. Therefore, Smith has failed to prove his prima facie case for retaliation, and accordingly, summary judgment is granted on the retaliation claim.

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment will be granted by separate order.

DONE this 30TH day of August 2002.

---
Chief United States District Judge
U.W. Clemon